IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HAROLD J. JOSEPH, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-0685-CV-W-ODS |
| | ) |
| COMMERCE BANK N.A., et al., | ) |
| | ) |
| Defendants. | ) |

<u>ORDER AND OPINION GRANTING MOTION TO REMAND (DOC. 3)</u>

Plaintiff has moved to remand this case back to the Circuit Court of Jackson County, Missouri. The Court grants Plaintiff's motion.

I. BACKGROUND

Plaintiff, a Missouri citizen, has sued Defendants Commerce Bank and Commerce Bancshares, also Missouri citizens, on behalf of himself and other similarly-situated Missourians who maintained a checking account with Defendants and incurred an overdraft fee.[1] Plaintiff accuses Defendants of providing false and misleading checking account information and failing to alert customers when a purchase would incur an overdraft fee. Plaintiff further alleges Defendants systematically and unfairly manipulate customers' transaction histories, including reordering debit transactions from the highest to the lowest amount, for the sole purpose of maximizing the number of overdrafts. And Plaintiff asserts Defendants' disclosure of their overdraft policies is misleading, vague, and inadequate. Plaintiff claims Defendants have violated the Missouri Merchandising Practices Act (MMPA), breached the customers' contracts (including the implied covenant of good faith and fair dealing), and have been unjustly

---

[1] Plaintiff's full description of the proposed class is found in paragraph 51 of the amended class action petition.

enriched.

Defendants removed this action from state court, asserting Plaintiff's causes of action were completely preempted by federal law. Defendants also asserted Plaintiff's claims raise substantial questions of federal law. Plaintiff moves the Court to remand his case back to state court on the basis that federal jurisdiction is lacking.

## II. DISCUSSION

Civil actions may be removed to federal court only if the action could have been filed originally in federal court. See 28 U.S.C. § 1441(b); *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). The party seeking removal has the burden to establish federal subject matter jurisdiction; all doubts about jurisdiction must be resolved in favor of remand. *Id.*

There is no diversity of citizenship to support removal in this case. *See* 28 U.S.C. § 1332(d) (providing original jurisdiction for class actions). Removal based on federal-question jurisdiction is governed by the well-pleaded-complaint rule, which provides that jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Central Iowa Power Co-op.*, 561 F.3d at 912. Federal- question jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). Plaintiff did not plead a federal cause of action in his petition.

Even where a plaintiff does not plead a federal cause of action in his or her complaint, federal-question jurisdiction may exist if a federal statute completely preempts a state cause of action. *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005). Federal question jurisdiction also may exist where a state law claim implicates significant federal issues. *Central Iowa Power Co-op.*, 561 F.3d at 912. The Court will evaluate Plaintiff's state law claims to determine whether they are completely preempted or implicate significant federal issues.

2

## (1) Complete Preemption

Complete preemption is distinct from ordinary preemption (*e.g.*, conflict preemption). *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 677 n.6 (8th Cir. 2009). Ordinary preemption is merely a defense with no jurisdictional implications–it does not provide a basis for federal-question jurisdiction. *Thomas v. U.S. Bank Nat. Ass'n ND*, 575 F.3d 794, 797 (8th Cir. 2009) ("[A] federal defense, e.g., preemption, is not enough to support the removal of a case to federal court" (citation omitted)); *Bates v. Missouri & Northern Arkansas R. Co., Inc.*, 548 F.3d 634, 636 (8th Cir. 2008). This is significant because Defendants' opposition to remand omits *any* argument for complete preemption; Defendants only argue *ordinary* preemption. Since ordinary preemption cannot support removal, Defendants' arguments are misplaced.

Complete preemption establishes more than a defense–it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Estes v. Federal Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005) (citations and internal quotations omitted). Complete preemption exists "when the preemptive force of a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted." *Thomas*, 575 F.3d at 797 (8th Cir. 2009) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Courts rarely and reluctantly conclude a statute is completely preemptive. *See Thomas*, 575 F.3d at 797; *Bates*, 548 F.3d at 636.

National banks are governed by the National Bank Act (NBA), 12 U.S.C. § 1 *et seq.*[2] The only state law causes of action that have been held to be completely preempted by NBA are usury claims challenging the lawfulness of interest charged by national banks. *See Beneficial Nat. Bank*, 539 U.S. at 11; *Phipps*, 417 F.3d at 1011. The sections of NBA that completely preempt state-law usury claims are located at 12 U.S.C. §§ 85 and 86. *Id.*

Plaintiff's overdraft claims are not usury claims and do not implicate §§ 85 and

---

[2] The parties agree Commerce Bank is a national bank governed by NBA.

86. Rather, the Office of the Comptroller of the Currency (OCC) has explained that a national bank's power to charge overdraft fees is part of or incidental to the bank's business of receiving deposits, the authority for which is provided in 12 U.S.C. § 24(Seventh). *See* OCC Interpretive Letter No. 1082 (May 17, 2007). OCC is the agency charged with administering NBA. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007).

Section 24(Seventh) is an extensive provision outlining the several powers national banks may exercise "to carry on the business of banking," including incidental powers and the power to "receiv[e] deposits." At least one federal court has held that § 24(Seventh) "is nothing more than a broad enabling provision. It creates no remedy." *Hancock v. Bank of America*, 272 F. Supp. 2d 608, 612 (W.D. Ky. 2003). Defendants notably do not argue that § 24(Seventh)–or any other part of NBA–creates an applicable cause of action, much less an exclusive one.

The Court has independently reviewed the text of § 24(Seventh) and perceives no indication Congress intended to create an express or implicit cause of action for a banks' alleged violation of its incidental or deposit-taking powers. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407-08 (8th Cir. 1999) (stating factors court considers to determine whether statute provides implied right of action). Congress did not intend for federal law to be the exclusive cause of action for claims challenging overdraft fees charged by national banks. No federal-question jurisdiction exists under the complete-preemption doctrine.

*(2) Implicate Significant Federal Issues*

There is no single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. *Central Iowa Power Co-op.*, 561 F.3d at 912 (citation and quotation marks omitted). To determine whether a case fits within this special and small category, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of

4

federal and state judicial responsibilities. *Id.* (citations and quotation marks omitted). Only a "slim category" of state-law claims meet this test. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

Defendants argue Plaintiff's claims for breach of contract, unjust enrichment, and for violation of MMPA "depend on his contention that [Defendants'] posting order is inequitable." Defendants maintain Plaintiff cannot establish inequity without showing Defendants violated 12 C.F.R. § 7.4002(a), which permits national banks to charge customers non-interest charges and fees. OCC has determined that this regulation "includes the authorization to determine the order in which the fees are posted to a depositor's account." *See* OCC Interpretive Letter No. 1082 (May 17, 2007).

But "if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816-17 (4th Cir. 2004) (citation omitted) (quoted in *Central Iowa Power Co-op.*, 561 F.3d at 914). Plaintiff's claims are not all premised solely on allegedly improper posting orders. Plaintiff's MMPA claim also includes allegations that Defendants charged overdraft fees even though they did not have to pay out more than funds than were in his account, that they charged overdraft fees on overdraft fees, and that they disclosed false and misleading information. Plaintiff's breach of contract claim also includes the allegation that Defendants charged overdraft fees even when an overdraft did not occur. And Plaintiff's unjust enrichment claim is broadly worded to include allegations beyond those involving the high-to-low posting order.

It is unclear whether Plaintiff's specific claim for breach of the implied covenant of good faith and fair dealing necessarily involves a contested federal issue.[3] It appears that Defendants' compliance (or lack thereof) with 12 C.F.R. § 7.4002 constitutes

---

[3] In addition to the high-to-low posting order, Plaintiff asserts Defendants breached the implied covenant of good faith by giving misleading account information that hindered his performance of the banking relationship. But Plaintiff gives no indication what contractual duties of his were affected by the misleading information; there was no contractual duty to avoid incurring overdraft fees. Without this allegation, Plaintiff's implied covenant claim is premised solely on the high-to-low posting order.

nothing more than a *defense* Defendants may raise, not an element of this claim. But even if Plaintiff's claim necessarily involves a dispute over Defendants' compliance with this regulation or authority under NBA, federal-question jurisdiction still would not exist.

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 313 (citations omitted). Defendants argue that the federal government has an interest in creating and maintaining uniform statutory regime, but this concern is "considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, [the Supreme Court] retains power to review the decision of a federal issue in a state cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 816 (1986) (footnote omitted). Given the Supreme Court's appellate jurisdiction, maintaining a uniform statutory regime is insufficient–on its own–to qualify as a substantial federal interest.[4]

And unlike *Grable*, Plaintiff's high-to-low posting claims will not turn on pure legal questions that could govern numerous later cases, but will require fact-bound and situation-specific determinations concerning the terms of the parties' contract and Plaintiff's expectations regarding Defendants' performance. *See Countrywide Services Corp. v. SIA Ins. Co., Ltd.*, 235 F.3d 390, 393 (8th Cir. 2000) ("The extent of the duty of good faith is determined by the express terms and expected benefits of the contract . . . .") Also unlike *Grable*, Plaintiff's claims were not triggered by the action of a federal agency, but by Defendants' decision to arrange debits in the high-to-low sequence. *See Empire Healthchoice Assur., Inc.*, 547 U.S. at 700 (distinguishing *Grable* on this basis). The direct federal interest present in *Grable* is not present here. *See Grable*, 545 U.S. at 315 (finding Government "ha[d] a direct interest in the

---

[4] The Court notes that the Fourth Circuit authority Defendants cite for their uniformity argument in turn relies upon *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 347-48 (1816), which involved Supreme Court *appellate* jurisdiction over state court decisions, not original jurisdiction of federal district courts.

6

availability of a federal forum to vindicate its own administrative action"). And Congress' failure to provide a cause of action in NBA for overdraft claims suggests it did not intend state actions involving overdrafts to invoke federal-question jurisdiction. *See Grable*, 545 at 318.

The Court holds that Plaintiff's claims do not implicate significant federal issues. A different conclusion was reached in a case raising similar allegations against a bank, *Johnson v. UMB Bank, N.A.*, No. 10-00654-CV-W-GAF (W.D. Mo. August 5, 2010) (Doc. 14). *Johnson* held federal-question jurisdiction existed because the plaintiff's claims required federal banking laws and regulations to be reviewed, analyzed, interpreted, and applied. But *Grable* requires a "contested" federal issue that is "substantial," 545 U.S. at 313, and *Johnson* did not analyze whether these criteria were satisfied. *Johnson* also noted in dicta that the question whether plaintiff's claims were preempted involved a substantial federal question, but preemption as a defense does not invoke federal-question jurisdiction. *See Thomas*, 575 F.3d at 797.

### III. CONCLUSION

Federal jurisdiction does not exist in this case. Plaintiff's motion to remand is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: September 17, 2010  UNITED STATES DISTRICT COURT